**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 11-22686-CIV-LENARD

**UNITED STATES OF AMERICA,**
ex rel. **DENNIS A. SOUZA,**

    Plaintiff-Relator,

**v.**

**AMERICAN ACCESS CARE**
**MIAMI, LLC,**

    Defendant.
_____/

**OMNIBUS ORDER GRANTING UNITED STATES' MOTION TO STRIKE RELATOR'S MOTION IN OPPOSITION TO SETTLEMENT AGREEMENT (D.E. 47), STRIKING RELATOR'S MOTION IN OPPOSITION TO SETTLEMENT AGREEMENT (D.E. 41), GRANTING JOINT MOTION OF UNITED STATES AND DEFENDANT TO DISMISS SETTLED CLAIMS (D.E. 46), AND CLOSING CASE**

**THIS CAUSE** is before the Court on, inter alia, the Joint Motion of United States and Defendant to Dismiss Settled Claims, ("Motion to Dismiss," D.E. 46), filed March 6, 2015. After careful review of the Motion to Dismiss; Relator's Motion in Opposition to Settlement Agreement (D.E. 41) and memorandum of law in support thereof, ("Objections," D.E. 42); the Government's Motion to Strike and Response to Relator's Objections, ("Motion to Strike," D.E. 47); Relator's Reply Brief in Support of his Objections, ("Reply," D.E. 48); and the record, the Court finds as follows.

**I.     Background**

On July 26, 2011, Relator, Dennis Souza ("Relator"), by and through counsel, filed this qui tam action on behalf of the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1).  (See Complaint, D.E. 1 ¶ 1.)  Realtor alleged violations arising out of false certifications, false diagnoses, and false statements in written submissions made by Defendant, American Access Care Miami, LLC ("AAC" or "Defendant").  (Id.)  He further alleged that AAC officials submitted false and fraudulent claims for approval of unnecessary medical procedures, and then fraudulently induced Medicare and Medicaid to reimburse AAC for the claims.  (Id. ¶ 17.)  Realtor, who was employed by AAC as a nurse, claimed to have observed physicians performing unnecessary procedures.  (Id. ¶¶ 11-12.)

The Government undertook an investigation into Relator's claims.  (See Motion to Strike at 3-5.)[1]  The investigation covered the period from February 1, 2009 through March 31, 2011.  (Id.)  It ultimately determined that based on a review of a random samples of beneficiaries, AAC was liable for $600,000 in single damages.[2]  (Id. at 5.)  This figure was based on a medical expert's determination that: (1) medical necessity could not be justified by the medical records for 27% of the percutaneous transluminal angioplasties ("PTAs") reviewed; (2) medical necessity could not be justified by the

---

[1]     The page numbers to which the Court cites are the page numbers generated by CMECF at the top of the document and not necessarily the page numbers assigned by the author of the document.

[2]     Violators of the False Claims Act are subject to treble damages, see 31 U.S.C. § 3729(a)(1), or reduced (but not less than double) damages if the court finds that the violator fully cooperated with the Government's investigation, 31 U.S.C. § 3729(a)(2).

medical records for 32% of the thrombectomies reviewed; and (3) over 11% of patients who had received a PTA had at least one instance where the number of PTAs billed was not supported by the medical record. (Id.) In December 2013, the Government presented the findings of its investigation to AAC. (See id.) After a year of discussions, the parties agreed to settle the case for double damages: $1.2 million. (Id. at 5-6.) On February 11, 2015, the United States and Fresenius (AAC's successor) executed a settlement agreement. (See id. at 6.)

On February 9, 2015, Relator—proceeding pro se—filed Objections to the Settlement Agreement. (See D.E. 42.) His three primary arguments are that: (1) the Government failed to investigate with reasonable diligence, (id. at 8-16); (2) the Government failed to pursue additional fraud against Defendant based on 2012 Medicare Data, (id. at 16-20); and (3) the Government failed to adequately calculate damages, (id. at 21-23).

On March 6, 2015—the same day the Government and Defendant jointly filed the Motion to Dismiss, (D.E. 46)—the Government filed its Motion to Strike Relator's Objections, (D.E. 47). The Government argued that the Objections should be stricken because (1) Relator filed it on a pro se basis in violation of Local Rule 11.1(d)(4) and (2) Relators cannot proceed pro se under the False Claims Act. (Id. at 6-7.) The Motion to Strike also provides a substantive response to Relator's Objections, arguing that the Objections should be overruled because the settlement: (1) is fair, adequate and reasonable; (2) serves valid governmental purposes; and (3) is not fraudulent, arbitrary or illegal. (Id. at 7-15.)

3

On March 20, 2015, Relator—once again acting through counsel—filed a Reply. (D.E. 48.) He maintains that the settlement agreement is inadequate and unreasonable under the totality of the circumstances. (Id. at 1-6.) Alternatively, he requests that if the Court approves the settlement agreement, it retain jurisdiction to determine Relator's share and award attorney's fees and costs. (Id. at 6.)

On May 7, 2015, Relator (through counsel) filed a Motion to Determine Fairness of Proposed Settlement Agreement. (D.E. 50.) Therein, he requests the Court to "render a decision based upon the filings of the parties hereto and waives the requirement of a hearing, if any, on the issue of fairness." (Id. ¶ 3.)

## II.  Discussion

Chief Judge Moore of the Middle District of Florida succinctly summarized qui tam actions under the FCA as follows:

> Congress enacted the FCA in 1863 with the primary purpose of being the government's litigation tool for combatting fraud against the federal government.[3] The FCA authorizes private individuals, in addition to the Attorney General, to file civil actions for enforcement. 31 U.S.C.S. § 3730(b) (Supp. 1994). Suits by private individuals, or qui tam suits, may be brought for any substantive violation of the Act.[4] Id. at § 3730(b)(1). However, the suit is brought in the name of the Government which has the option of intervening and proceeding with the action. Id. at § 3730(b)(1) & (4). If the Government declines to intervene in the qui tam action, the

---

[3] Senate Judiciary Committee, False Claims Amendments Act of 1986, S.Rep. No. 345, 99th Cong., 2d Sess. 2 (1986), reprinted in 1986 U.S.C.C.A.N. 5266.

[4] The term "qui tam" is short for "qui tam pro domino rege quam pro se imposo sequitur" which means "who brings the action as well for the king as for himself." Bass Anglers Sportsman's Society of Am. v. U.S. Plywood–Champion Papers, Inc., 324 F. Supp. 302, 305 (S.D. Tex.1971).

4

> private individual or relator possesses the right to conduct the action. Id. § 3730(b)(4).
>
> If the Government chooses to intervene, it has the primary responsibility for prosecution and may settle or dismiss the action. Id. § 3730(c)(2). The relator may continue as a party to the qui tam action and may object to its settlement or dismissal. Id. § 3730(c). However, the action may be settled or dismissed notwithstanding objection provided the relator has been notified of the proposed action and an opportunity for a hearing on the motion. Id. § 3730(c)(2). In approving a proposed qui tam settlement, the court must find that it is fair, adequate, and reasonable under all the circumstances. Id. § 3730(c)(2)(B).

United States ex rel. Burr v. Blue Cross & Blue Shield of Fla., Inc., 882 F. Supp. 166, 168 (M.D. Fla. 1995) (footnotes in original); see also Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter, __ U.S. __, 135 S. Ct. 1970, 1973-74 (2015) (noting that whether the government elects to proceed with the action or declines to take over the action, "it retains the right at any time to dismiss the action entirely, § 3730(c)(2)(A), or to settle the case, § 3730(c)(2)(B)").

Here, the Government has intervened for the purpose of settlement, (D.E. 44), and the Parties have filed a proposed Settlement Agreement for the Court's review, (D.E. 46-2). The FCA provision that deals with judicial review of qui tam settlements provides:

> The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. Upon a showing of good cause, such hearing may be held in camera.

31 U.S.C. § 3730(c)(2)(B).

Despite being represented by counsel, Relator filed pro se Objections to the proposed Settlement Agreement. (See D.E. 41.) The Eleventh Circuit has expressly held

5

that pro se relators may not maintain actions on behalf of the United States under the FCA.  See Timson v. Sampson, 518 F.3d 870, 873-74 (11th Cir. 2008) (citing Stoner v. Santa Clara Cnty. Office of Educ., 502 F.3d 1116, 1126-28 (9th Cir. 2007); United States ex rel. Lu v. Ou, 368 F.3d 773, 775-76 (7th Cir. 2004)).  The district court in Timson explained the rationale behind this rule: "A pro se litigant's lack of formal legal training is of a particular concern in qui tam actions, given the interests of the United States that are at stake, the complexity of issues often raised in false claims actions, the resources necessary to prosecute such actions effectively, and the exposure of the Government to risk in terms of res judicata and collateral estoppel."  United States ex rel. Timson v. Sampson, No. 8:06-CV-1544-T-27TBM, 2007 WL 1498676, at *1 (M.D. Fla. April 30, 2007), adopted as modified by United States ex rel. Timson v. Sampson, No. 8:06-CV-1544-T-27TBM, 2007 WL 1471963, at *1 (M.D. Fla. May 18, 2007).  The Government argues that "[t]hese concerns apply with equal force to an unrepresented relator's attempt to challenge a proposed settlement that the government has reached with a defendant." (Motion to Strike at 6-7.)  It therefore requests that the Objections be stricken.  (See id.)  In his Reply, Relator fails to address the Government's argument.  (See D.E. 48.)

Although the Court has not identified a prior case addressing whether an otherwise represented relator may file pro se objections to a proposed settlement agreement, it seems unlikely under Timson.  518 F.3d at 873-74.  However, the Court need not reach the issue because Relator's pro se objections violate Local Rule 11.1(d)(4), which states, in relevant part:

6

> Whenever a party has appeared by attorney, the party cannot thereafter appear or act on the party's own behalf in the action or proceeding, or take any step therein, unless an order of substitution shall first have been made by the Court, after notice to the attorney of such party, and to the opposite party[.]

S.D. Fla. L.R. 11.1(d)(4). Here, with the sole exception of the Objections, attorney Christopher Rush has represented and acted on Relator's behalf throughout the proceedings. (See Complaint (D.E. 1), Motion to File Complaint In Camera and to Place Complaint Under Seal (D.E. 4), Notice of Unavailability (D.E. 30), Reply (D.E. 48), and Motion to Determine Fairness of Proposed Settlement Agreement (D.E. 50).) Relator never sought, and the Court never ordered, a substitution of counsel. Accordingly, Relator's Objections are stricken for violating Local Rule 11.1(d)(4). See United States v. Miller, 432 F. App'x 955, 961 (11th Cir. 2011) (affirming district court's order striking a pro se motion filed by a represented defendant in violation of the Middle District of Florida's local rule prohibiting represented parties from filing pro se motions); cf. Arugu v. City of Plantation, 440 F. App'x 843, 844-46 (11th Cir. 2011) (affirming district court's order imposing sanctions against a represented plaintiff who filed a pro se motion in violation of Local Rule 11.1(d)(4)).

Even if Relator had properly objected, he expressly waived his right to a hearing and requested the Court to render a decision based upon the filings. (Reply, D.E. 50 ¶ 30.) Thus, the Court need not hold a hearing to determine the fairness, adequacy, and reasonableness of the Parties' Settlement Agreement.

Next, there is a split of authority (which is scant to begin with) regarding the proper standard of a district court's review of a proposed qui tam settlement under 31

7

U.S.C. § 3730(c)(2)(B).  The Government argues that the Court should apply the deferential standard for reviewing qui tam dismissals under 31 U.S.C. § 3730(c)(2)(A)[5] adopted in United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp., 151 F.3d 1139, 1145 (9th Cir. 1998).  (Motion to Strike at 9.)  Under Sequoia:

> A two step analysis applies . . . to test the justification for dismissal: (1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose.  If the government satisfies the two-step test, the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal.

Id. at 1145 (citations and internal quotation marks omitted).  Some courts—including one in this district—have extended the Sequoia standard to judicial review of proposed settlements under Section 3730(c)(2)(B).  See United States ex rel. Guthrie v. A Plus Home Health Care, Inc., Case No. 12-60629-CIV-Dimitrouleas/Snow, slip op. (D.E. 217) at 5 (S.D. Fla. Nov. 5, 2014);[6] United States v. Ctr. for Diagnostic Imaging, Inc., Case No. C05-0058RSL, slip op. (D.E. 130) at 6 (W.D. Wash. Apr. 4, 2011);[7] United States ex rel. Grober v. Summit Med. Grp., Inc., et al., Civil Action No. 02-177-C, slip op. (D.E. 41) at 6 (W.D. Ky. July 9, 2004).[8]

---

[5] Section 3730(c)(2)(A) states: "The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."

[6] A copy of this Order is attached as Exhibit E to the Motion to Strike.  (See D.E. 47-5.)

[7] A copy of this Order is attached as Exhibit D to the Motion to Strike.  (See D.E. 47-4.)

[8] A copy of this Order is attached as Exhibit C to the Motion to Strike.  (See D.E. 47-3.)

Other courts reviewing qui tam settlements have looked to the principles guiding judicial review of class action settlements under Federal Rule of Civil Procedure 23(e)(2), which requires a finding that the settlement is "fair, reasonable, and adequate."[9] See United States ex rel. Schweizer v. Oce N.A., 956 F. Supp. 2d 1, 10 (D.D.C. 2013); United States ex rel. Resnick v. Weill Med. Coll. of Cornell Univ., 04 Civ. 3088(WHP), 2009 WL 637137, at *2 (S.D.N.Y. Mar. 5, 2009); United States ex rel. Nudelman v. Int'l Rehab. Assocs., Inc., 00-cv-1837, 2004 WL 1091032, at *1 n.1 (E.D. Pa. May 14, 2004). As Judge Altonaga has recognized, "the Court must 'exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions.'" Figueroa v. Sharper Image Corp., 517 F. Supp. 2d 1292, 1319 (S.D. Fla. 2007) (quoting Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 279 (7th Cir. 2002) (Posner, J.)). Heightened judicial scrutiny is required "to protect the rights of the many absent class members who were not involved in the negotiations leading to settlement." In re Corrugated Container Antitrust Litig., 643 F.2d 195, 225 (5th Cir. 1981).[10]

---

[9] Courts in the Eleventh Circuit consider the following factors when determining whether a class action settlement is fair, adequate, and reasonable:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984) (citations omitted).

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981. Corrugated Container was rendered April 3, 1981.

However, the concerns requiring close scrutiny of proposed class action settlements do not exist in qui tam settlements because the Government is the real party in interest in a qui tam action.  See Timson, 518 F.3d at 573.  The Court need not protect the Government from itself by closely scrutinizing settlements it negotiates at arm's length with the Defendant;[11] indeed, doing so may raise separation of powers concerns.  See Sequoia, 151 F.3d at 1145-46 (stating that "a rational relation test avoids any separation of powers concerns").  Close scrutiny of qui tam settlements is also inconsistent with the Government's broad discretion to prosecute or dismiss qui tam actions.  See Swift v. United States, 318 F.3d 250, 252 (D.C. Cir. 2003) (rejecting Sequoia standard for reviewing qui tam dismissals in favor of an even more lenient standard under which the Government has a virtually "unfettered right to dismiss an action"); Sequoia, 151 F.3d at 1145 (noting the "congressional intent that the qui tam statute create only a limited check on prosecutorial discretion to ensure suits are not dropped without legitimate governmental purpose").  It would be anomalous for the Government to be vested with broad discretion to dismiss qui tam claims but not to settle them on terms it deems fair.  Indeed, Sequoia expressly recognizes that "the government's power to . . . settle an action is broad."  151 F.3d at 1144.  Moreover, as the court recognized in Diagnostic Imaging, many of the factors that some jurisdictions apply to class action settlements "are plainly inapplicable to the government's attempt to settle a suit brought on its own behalf."  Case No. C05-0058RSL, slip op. at 5 (citing

---

[11] Close judicial scrutiny seems even less necessary where, as here, there are no valid objections to the settlement agreement.

Rodriguez v. West Publ'g Corp., 563 F.3d 948, 963 (9th Cir. 2009) (applying factors including the "reaction of the class members to the proposed settlement")).

For these reasons, "the Court's review of the proposed settlement cannot be as searching as its review of a private class action settlement." Diagnostic Imaging, Case No. C05-0058RSL, slip op. (D.E. 130) at 7. Instead, the Court will review the proposed qui tam settlement under the Sequoia standard, pursuant to which the Government must justify dismissal of the settled claims by (1) identifying a valid government purpose and (2) demonstrating a rational relation between the dismissal and accomplishment of the purpose. 151 F.3d at 1145.

The Government argues that the settlement serves a valid governmental purpose, to wit: "[B]y settling for double the damages the government identified during its investigation, the government is ensuring that Medicare recovers funds lost to the fraud identified in this case and is securing additional funds to support the Medicare Trust Fund and HHS's continuing enforcement actions against health care fraud." (Motion to Strike at 10.) It further argues that settlement at this stage "'avoids the complexity, expense, and duration of ongoing litigation. Settlement also allows the government and the Relator to avoid the uncertainty of proceeding to trial.'" (Id. at 11 (quoting United States ex rel. Stone v. Hospice of the Comforter, Inc., No. 6:11-cv-01498-ACC-DAB, slip op. (D.E. 41) (M.D. Fla. Oct. 28, 2013)).)[12]

---

[12] A copy of this Order is attached as Exhibit F to Plaintiff's Motion to Strike. (See D.E. 47-6.)

The Court finds that the Government has satisfied its burden under Sequoia.  First, the Government has a valid interest in

> resolving the case through a double damages award, which will make the Federal Health Care programs whole, provide for a reasonable (as yet unspecified) relator share and reasonable attorney's fees, reimburse the agency of its investigative costs, contribute to future fraud enforcement efforts and may even add something extra to the Medicare fund.

Diagnostic Imaging, Case No. C05-0058RSL, slip op. (D.E. 130) at 8.  Additionally, "[i]t is certainly a valid government purpose to conserve resources expended in litigation and to maximize recovery[.]"  Guthrie, Case No. 12-60629-CIV-Dimitrouleas/Snow, slip op. (D.E. 217) at 5.  Moreover, there is a rational relationship between the settlement and the government's goals.  See id.; see also Diagnostic Imaging, Case No. C05-0058RSL, slip op. (D.E. 130) at 8.

By failing to file proper objections, Relator has failed to demonstrate that the proposed settlement is fraudulent, arbitrary and capricious, or illegal.  See Sequoia, 151 F.3d at 1145.  To the extent that the Court is required to make a finding notwithstanding Relator's failure to properly object, the Court finds that the proposed settlement is not fraudulent, arbitrary and capricious, or illegal.  See Guthrie, Case No. 12-60629-CIV-Dimitrouleas/Snow, slip op. (D.E. 217) at 5; Diagnostic Imaging, Case No. C05-0058RSL, slip op. (D.E. 130) at 8.   The Court therefore concludes that the proposed settlement is "fair, adequate, and reasonable under all the circumstances."[13]  31 U.S.C. § 3730(c)(2)(B).

---

[13] The settlement is fair, adequate, and reasonable even under the heightened scrutiny courts in this Circuit apply to reviewing class action settlements.  See Note 8, supra.

**III.   Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The United States' Motion to Strike Relator's Motion in Opposition to Settlement Agreement (D.E. 47), filed March 9, 2015, is **GRANTED**;

2. Plaintiff/Relator Dennis A. Souza's pro se Motion in Opposition to Settlement Agreement ("Objections," D.E. 41), filed February 9, 2015, is **STRICKEN** for violating Local Rule 11.1(d)(4);

3. The Joint Motion of United States and Defendant to Dismiss Settled Claims (D.E. 46), filed March 9, 2015, is **GRANTED**;

4. All claims against the Defendant are **DISMISSED WITH PREJUDICE** as to the Relator and **DISMISSED WITH PREJUDICE** as to the United States for the Covered Conduct set forth in the Settlement Agreement;

5. All pending motions are **DENIED AS MOOT**; and

---

That is, the settlement is fair, adequate, and reasonable when considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. See Diagnostic Imaging, Case No. C05-0058RSL, slip op. (D.E. 130) at 8-9 (finding in the alternative that qui tam settlement was fair, adequate, and reasonable under Ninth Circuit's factors for reviewing class action settlements); Stone, No. 6:11-cv-01498-ACC-DAB, slip op. (D.E. 41) at 5 (declining to adopt a standard of review and finding that the settlement was fair, adequate, and reasonable under both Sequoia and the standard for reviewing class actions); Schweizer, 956 F. Supp. 2d at 14-16 (finding that qui tam settlement was fair, adequate, and reasonable under D.C. District Court's factors for reviewing class action settlements).

**6.** This case is now **CLOSED**. The Court shall retain jurisdiction to determine Relator's share if the Parties are unable to resolve the issue, and award attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(1) and (2).

**DONE AND ORDERED** in Chambers at Miami, Florida this 29th day of June, 2015.

                                                  _____
                                                  **JOAN A. LENARD**
                                                  **UNITED STATES DISTRICT JUDGE**